UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>MICHAEL A. REAMSBOTTOM,<br><br>       Defendant. | CASE NO.   05-230 M<br><br>DETENTION ORDER |

Offenses charged:

    Count I:    Conspiracy to Possess and Distribute Ephedrine, in violation of Title 21, U.S.C., Section 841(c)(2) and 846;

    Count II:   Conspiracy to Distribute MDMA, in violation of Title 21, U.S.C., Sections 841(a)(1), 841(b)(1)(C), and 846.

Date of Detention Hearing: May 24, 2005.

       The Court, having conducted a contested detention hearing pursuant to Title 18 U.S.C. § 3142(f), and based upon the factual findings and statement of reasons for detention hereafter set forth, finds that no condition or combination of conditions which the defendant can meet will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. The Government was represented by Michael

DETENTION ORDER
PAGE -1-

1  Lang. The defendant was represented by Walter Palmer.

2   The Government argued for detention based on danger to the community and risk
3  of flight. The Government contended that the danger is evident given that the combined
4  value of the drugs involved is estimated to be worth over ten million dollars in United States
5  currency, which is the largest such seizure at the U.S.-Canadian border to date. The
6  Government stated that the quantity of drugs, 300 kilograms of ephedrine and 100 kilograms
7  of ecstasy, and the monetary worth of the seizure raises the stakes and threat of danger for
8  all parties involved.

9   The Government asserted that the Complaint, which ties this defendant to a
10 conspiracy involving three other charged individuals, includes a rented U-Haul truck and
11 connections to a U-Haul storage locker which contained documents referencing a fictitious
12 company, several empty hockey bags, a shoe box, and seed bags which tested positive for
13 ecstasy. The Government indicated that the empty seed bags suggest prior deliveries.

14  The Complaint refers to a 1991 Ford commercial box truck that was used for
15 smuggling the drugs between Canada and the United States. Upon border crossing into the
16 United States, the cargo manifest indicated a final destination for delivery to a company by
17 the name of Northwest Resale. Investigation by federal authorities revealed that Northwest
18 Resale was a fictitious company which in fact was an empty field in Snohomish,
19 Washington. This same fictitious company was referenced in documents found in the U-
20 Haul storage locker.

21  The Government alleged that the defendant, Michael Reamsbottom, has been
22 identified by two witnesses. The first witness, from the U-Haul storage facility, positively
23 identified the defendant's photograph as the signatory to the storage locker as shown on
24 rental documents given to the FBI with the name of Michael Reamsbottom. This same
25 storage locker contained evidence of drug shipments and the fictitious company Northwest
26 Resale. The second witness, a loading dock worker at Pro-Pack Freight Forwarding,

identified the defendant to the cargo of drugs and as the usual U-Haul rental truck driver for pick-up. Upon investigation, Pro-Pack records revealed that the defendant signed for the "commercial goods" on a least three different occasions, paying the receiving bill in cash. The Government asserted that the defendant's ties to the conspiracy suggest that the defendant is a lead organizer of the conspiracy.

Concerning an elevated risk of flight risk, the Government noted that although he has no reported employment other than child care and was a student in California 2002-2003, the defendant has traveled to Mexico on at least three occasions. The Government believed that this suggests the defendant's assets exceed what he has reported to the authorities. Finally, the Government reports a discrepancy in the residence of the defendant; the defendant stated he resides with his father in Canada; his father stated the defendant lives in Medford, Oregon with his girlfriend.

To the contrary, the defense opposed detention and concurred with the position of U.S. Pre-trial recommending the defendant's release. The defense maintained that the defendant has significant family ties, pointing to the presence of family and friends in the courtroom. All who were present reside in Canada.

The defense conceded that the seizure consisted of a large quantity of chemicals and pills, however refuted the estimated street value, adding that the theoretical offense level was the least important factor to be considered. The defense asserted that the witnesses cited by the Government identified the defendant's name only, adding that the defendant has no arrest history in the U.S. or Canada and does not use illegal substances.

The defense argued that the defendant considers his father's residence to be his permanent residence, and that he does not presume his girlfriend's residence to be his. Additionally, the defense purported that the defendant and his girlfriend went to Mexico to celebrate a birthday, and that young people find ways to travel inexpensively. The defense disclosed additional travel to Ireland, maintaining that such travel should not raise a red flag.

The defense contended that the child care employment of the defendant was verified by his father, and that financial assets of the defendant could be justified as he was living with his father rent-free. Finally, the defense addressed the Canadian citizen issue, stating that strong family support is a critical factor in alleviating any concern for flight risk.

## FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION

(1) There is probable cause to believe the defendant committed the conspiracy drug offense. The maximum penalty is in excess of ten years. There is therefore a rebuttable presumption against the defendant's release based upon both dangerousness and flight risk, under Title 18 U.S.C. § 3142(e).

(2) Using the factors below, under Title 18 § 3142 (g), the Court considered the following:

(a) <u>The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug</u>. The charge of Conspiracy to Possess and Distribute Ephedrine does involve a series of reasonable inferences when taken together describe acts of four persons working in concert to obtain historically large quantities of ephedrine for illegal distribution.

(b) <u>The weight of the evidence</u>. The weight of the evidence against the defendant appears to be significant when taken together with the acts of co-conspirators, each playing a role to accomplish the overall result. Witness statements identifying the defendant further corroborate the evidence and his ties to the conspiracy.

(c) <u>The history and characteristics of the person</u>, including:

<u>The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of the current offense or arrest, the person was on probation, on parole, on other release pending trial, sentencing, appeal, or completion of sentence of an offense under Federal, State, or local law.</u> The defendant's ties to the community in this instance are not sufficiently suitable. The defendant has no arrest history in the U.S. or Canada, however as a Canadian citizen, he has no ties to this district. Furthermore, he is not currently employed nor has he indicated any concrete prospects.

    (d)    <u>Risk of danger to the community</u>. The danger to any person or the community that would be posed by the defendant's release appears great given the immense quantity of drugs and its street value. For this defendant to have been entrusted with the responsibility inherent in this level of a large drug transaction, there is a significant likelihood that his value to the organization is great and thus the incentives to continue in criminal activity persist. Thus, concerns for increased danger to the community abides, if not also increasing the risk of flight.

(3)    Based upon the foregoing information, it appears that there is no condition or combination of conditions that would reasonably assure future Court appearances and/or the safety of other persons or the community.

DETENTION ORDER
PAGE -5-

**It is therefore ORDERED:**

(1) The defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The defendant shall be afforded reasonable opportunity for private consultation with counsel;

(3) On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding; and

(4) The clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Pretrial Services Officer.

DATED this 26th day of May, 2005.

_____
MONICA J. BENTON
United States Magistrate Judge